CRAWFORD *& a.* *v.* PARSONS *& a.*

Counts in covenant and case may be joined in a declaration on a single cause of action.

The legal construction of a written contract is the ascertainment of the fact of the parties' intention from competent evidence.

In a grant of a right to draw water from a pond after the grantor's grist-mill is supplied from the same pond, his right to continue to use the water-power in the mill for a purpose not necessary for the operation of the mill is not implied.

In an action of a lessee of a mill against his lessor for a diversion of
water, depriving the plaintiff of the demised water-power, damages for
loss of profits being claimed in the declaration, and loss of profits be-
ing a damage the parties could have reasonably anticipated, proof of
the profits of the business done at the mill is admissible on the ques-
tion of damages.

COVENANT, on a lease by which the defendants let to the plain-
tiffs a lot of land in Colebrook, to be used in the manufacture of
potato starch, for twenty years from Feb. 9, 1874, at a yearly rent
of $125, " with the right to draw water from the grist-mill pond
sufficient to carry and operate a starch-mill, said lessees to have
the first use of the water after the grist-mill is supplied from said
pond, * * * provided the said " lessees " shall not draw the
water out of the pond more than six inches below the top of the
dam where the waste water runs over: * * * and the said
lessors covenant with the said lessees that they may occupy said
premises during said term peaceably, without lawful interruption
from any person or persons whatsoever." The alleged breach is,
that the defendants deprived the plaintiffs of the use of the water
to which they were entitled, and neglected to furnish it. Plea, full
performance. Verdict for the plaintiffs. After the trial had pro-
ceeded several days, the plaintiffs were allowed to amend the dec-
laration by adding a count in case, subject to exception.

At the date of the lease the defendants owned and operated the
grist-mill, which was situated on the west side of a road. To
furnish it with power, water was drawn, through an artificial
canal, from a pond on the east side of the road to a smaller pond
on the west side. The grist-mill privilege was on the south side,
and the starch-mill privilege was at the westerly end, of the small
pond. The latter privilege was leased to one Merrill in 1854, and
was used and occupied by him thereafter up to and including the
season of 1873. During the later half of the term of Merrill's
lease, the defendant, C. E. Rolfe, erected a carriage and sash and
blind shop on the east side of the road, and constructed a flume,
and drew water from the main canal at a point between the two
ponds. Both parties claimed and put in evidence to prove that the
Rolfe flume was in the same condition at the trial as at the time
of the waste and interruptions complained of by the plaintiffs; and
the jury saw it twice. The following evidence was admitted, sub-
ject to the defendants' exception :—The plaintiff Crawford, who
was an expert, testified that with the water saved which the de-
fendants' allowed to waste, and without interruptions by Rolfe, the
plaintiffs' work of manufacturing in 1875 and 1876 could have been
done in about half the time it was done ; and that there was a good
stream of water running through the Rolfe flume on the morning
of the day he testified. Hicks, an expert, who had worked for
Merrill before the Rolfe mill was built, testified that Merrill's

wheel was much larger than the plaintiffs', and took three times as much water; and that there was plenty of water before Rolfe built his mill. W. S. Rolfe, who was part owner of and operated the Rolfe mill at one time, testified that the plaintiffs' flume and Merrill's flume were on the same level, and that, while operating the Rolfe mill in low water, he could draw the water away from either of the mills below. Gathercole, who had worked for Merrill before the Rolfe mill was built, testified that Merrill usually had water enough after the fall rains came, the few first years. The plaintiffs claimed that during all the years they operated the starch-mill, Rolfe used the water, more or less, to which they were entitled, whereby they suffered loss and damage. The defendants claimed that some years Rolfe did not use it at all, and that when he did it was with the plaintiffs' consent, or when it was running to waste over the dam, and therefore that he in no way wrongfully hindered or obstructed them in the prosecution of their business. The jury were instructed to decide which claim was true.

Among the acts complained of by the plaintiffs, as negligent or wanton infractions of their right, was the use of a belt running from the elevator shaft in the grist-mill, to operate a pump by which water was forced from a spring under the mill to the house of the defendant Rolfe, and another where it was used for domestic purposes. The pump had been used before the lease as it was afterwards. Its existence was known to the defendants, and was not known to the plaintiffs, when the lease was executed; and by reason of its location it was not open to ordinary observation. The defendants requested the court to instruct the jury that the words of the lease, "after the grist-mill is supplied from said pond," are to be construed in reference to the state of things existing at the time the instrument was executed; that the right of the lessees was subject to a supply for the grist-mill as it was then used; and that this fairly includes the trifling burden then attached to one of the grist-mill wheels operating the force-pump to supply Rolfe's house for domestic purposes. The instructions given on this point were, that if by the use of the grist-mill power to drive the force-pump the plaintiffs were deprived of any water belonging to them which they wanted to use, there was a violation of the lease. The defendants excepted to the refusal to give the instruction requested in relation to the pump.

*Parsons & Johnson, Ray, Drew, Jordan & Carpenter*, and *Ladd & Fletcher*, for the defendants. I. The amendment, adding a count in case, was error. Counts in tort cannot be joined with counts in contract. 1 Ch. Pl. 198, 199; *Wilson* v. *Marsh*, 1 Johns. 503; *Stoyel* v. *Westcott*, 2 Day 418; *Church* v. *Mumford*, 11 Johns. 479; 2 Wms. Saund. 117 *c.* note; *Crooker* v. *Willard*, 28 N. H. 134; *Peabody* v. *Kinsley*, 40 N. H. 416; *Hopkins* v. *Railroad*, 36 N. H. 9, 12; *Morrison* v. *Bedell*, 22 N. H. 234, 236. Counts may be

joined when the same plea may be pleaded, and the same judgment given on them all, or when they are of the same nature, and the same judgment is to be given on them all though the pleas be different. 1 Ch. Pl. 200 ; 2 Saund. 117. The obvious reason of the rule is, that were different causes of action joined, two judgments of different kinds would be needed in one action. Gould Pl. 219. "In general, where one count in a declaration is good, and another substantially ill, if the jury, upon a plea to the whole declaration, or upon a default, find a general verdict for the plaintiff, with entire damages, the defendant may cause the judgment to be arrested ; for it is impossible for the court, judging, as it must, from the record alone, to discover on which count the damages were assessed, or what proportion of them may have been assessed on the one count or the other ; and the jury, as the law presumes, are as likely to have assessed them on a bad count as on a good one." *Peabody* v. *Kinsley*, 40 N. H. 416, 418 ; Gould Pl. 523 ; 1 D. & E. 151, 508 ; 2 Saund. 171 b. note 1 ; 2 Mass. 53, 408 ; 9 Pick. 547. "Amendments are not allowed when injustice will be done thereby." *Redding* v. *Dodge*, 59 N. H. 98. In *Whitaker* v. *Warren*, 60 N. H. 20, a count for the common-law remedy was added to a count for the statutory remedy on the same cause of action. In *Rutherford* v. *Whitcher*, 60 N. H. 110, both counts were on a single cause of action.

II. There being no eviction of the plaintiffs, and no covenant of the defendants to repair, damages cannot be recovered for any loss caused by the imperfection or want of repair of the defendants' dam. *Robbins* v. *Mount*, 4 Rob. (N. Y.) 553 ; *Foster* v. *Peyser*, 9 Cush. 242. Neglect to repair is not eviction. *Speckels* v. *Sax*, 1 E. D. Smith (N. Y.) 253. There being no stipulation on the subject in the lease, the plaintiffs took the risk of the future condition of the premises. *Libbey* v. *Tolford*, 48 Me. 316 ; *Trustees* v. *Brett*, 25 Ind. 409 ; *Morse* v. *Maddox*, 17 Mo. 569 ; *Scott* v. *Simons*, 54 N. H. 426.

III. Nothing short of an eviction, or acts on the part of the defendants tantamount to an eviction, would justify the plaintiffs in surrendering and abandoning the premises. There being no claim of eviction, they are not absolved from their covenants. They are bound to pay the rent for the whole term. Actual injury, and not anticipated injury, is the legal ground of recovery. *Daniels* v. *Newton*, 114 Mass. 539. Remote, contingent, or speculative damages, or such as might have been avoided by the lessees, if they had made the repairs, and charged the expense to the lessors, were not allowable. *Fisher* v. *Goebel*, 40 Mo. 475. To charge one in damages for breach of an executory personal contract. the other party must show a refusal or neglect to perform at a time when and under conditions such that he is or might be entitled to require performance. *Daniels* v. *Newton, supra ; Frazier* v. *Cushman*, 12 Mass. 277 ; *Pomroy* v. *Gold*, 2 Met. 500 ; *Hap-*

*good* v. *Shaw*, 105 Mass. 276; *Carpenter* v. *Holcomb*, 105 Mass. 280; *Phillpotts* v. *Evans*, 5 M. & W. 475; *Ripley* v. *M'Clure*, 4 Exch. 345; *Lovelock* v. *Franklyn*, 8 Q. B. 371; *Frost* v. *Knight*, L. R. 7 Ex. Cases 111, 114; *Nason* v. *Holt*, 114 Mass. 541.

IV. Remote and speculative damages cannot be recovered. The damages recoverable for failure to complete a contract to put up machinery do not include prospective gains, unless there are outstanding contracts to be performed by the machinery. *Frazer* v. *Smith*, 60 Ill. 145; *Washburn* v. *Hubbard*, 6 Lans. (N. Y.) 11; *French* v. *Ramge*, 2 Neb. 254; *Smith* v. *Smith*, 45 Vt. 433. In an action by a lessee of a grist-mill against the lessor for failure to keep the dam in repair according to a provision of the lease whereby the mill had not the supply of water necessary for doing all its business, the measure of damages is the difference between the rental value of the mill in the condition in which it was, and its value in the condition in which the defendant agreed to keep it. The additional profits the lessee would have made in the business of the mill if it had been put and kept in such condition are too remote to constitute a basis of recovery. *Winne* v. *Kelley*, 34 Iowa 339; *Rogers* v. *Bemus*, 69 Penn. 432.

*Aldrich & Remick*, for the plaintiffs. I. The amendment was properly allowed. *Whitaker* v. *Warren*, 60 N. H. 20; *Rutherford* v. *Whitcher*, 60 N. H. 111.

II. The rule that a lessor is not bound to repair in the absence of a contract, express or implied, on the subject, does not exempt the defendants from liability for negligently and wantonly suffering the water to run to waste through their leaky dam, which continued, and by the contract was to continue, under their control. They reserved the first right to the water for the grist-mill; and the plaintiffs were entitled to none until the grist-mill was supplied. The dam was appurtenant to the grist-mill; continued by the lease in the ownership and control of the defendants; and was used by them in the exercise of their first water-right. The defendants could not destroy the plaintiffs' second right by allowing the dam to go to ruin. *Scott* v. *Simons*, 54 N. H. 426; *Toole* v. *Beckett*, 67 Me. 544; *Priest* v. *Nichols*, 116 Mass. 407; *Stapenhorst* v. *Am. M. Co.*, 46 How. Pr. 510—*S. C.*, 15 Abb. (N. S.) 355; *Glickauf* v. *Maurer*, 75 Ill. 289; *Marshall* v. *Cohen*, 44 Ga. 489; *Jones* v. *Freidenburg*, 66 Ga. 505; *Doupe* v. *Genin*, 45 N. Y. 119, 124; *Bank* v. *Newton*, 57 How. Pr. 152.

The leaks in the dam were not the only diversion of water of which the plaintiffs complained. The defendant Rolfe continually drew water to run his carriage, sash, and blind shop. The stream was obstructed by the defendants' negligent removal of a rack from the mouth of the tunnel, and by their negligent and dilatory removal of the obstruction. For this they are liable. *Scott* v. *Simons, supra; Gill* v. *Middleton*, 105 Mass. 479. The only

ground upon which the operation of the force pump can be included in the defendants' reservation is, that the pump was in the mill at the date of the lease. But nothing is included in a grant or reservation by implication that is not necessary to the enjoyment of the thing granted or reserved. *Smith* v. *Smith* (Grafton, June, 1882); Taylor Land. & Ten. 162; Wash. Ease. 61; *Riddle* v. *Littlefield*, 53 N. H. 503; *Spaulding* v. *Abbot*, 55 N. H. 423, 426.

III. The plaintiffs, being unable to operate the starch mill more than half of the time, were justified in abandoning the premises. They were not bound to make successive offers of performing their part of the contract, but were absolved by the defendants' breach from making further efforts to perform, and can recover for a total breach. Sedg. Dam. 202; *Royalton* v. *R. & W. Turnpike*, 14 Vt. 311; *Masterton* v. *Mayor*, 7 Hill 62; *Shaffer* v. *Lee*, 8 Barb. 412; *N. Y. & H. R. R. Co.* v. *Story*, 6 Barb. 419; *Seaton* v. *Municipality*, 3 La. Ann. 44; *Fail* v. *McRee*, 36 Ala. 61; *Schell* v. *Plumb*, 55 N. Y. 592; *Fales* v. *Hemenway*, 64 Me. 373; *Remelee* v. *Hall*, 31 Vt. 582; *Bristol M. Co.* v. *Gridley*, 28 Conn. 213; *Van Zandt* v. *Mayor*, 8 Bosw. 375.

IV. Damages for the loss of profits alleged in the declaration could be recovered. *Taylor* v. *Dustin*, 43 N. H. 493; *Stevens* v. *Lyford*, 7 N. H. 360; *Holden* v. *Lake Co.*, 53 N. H. 552, 560; *S. F. Bridge* v. *Fisk*, 23 N. H. 171; *Simmons* v. *Brown*, 5 R. I. 299; *Lawson* v. *Price*, 45 Md. 123; *Hinckley* v. *Beckwith*, 13 Wis. 31; *White* v. *Moseley*, 8 Pick 356; *Frye* v. *Railroad*, 67 Me. 414; *Shepard* v. *Gas Co.*, 15 Wis. 318; *Griffin* v. *Colver*, 16 N. Y. 489; *Wolcott* v. *Mount*, 36 N. J. 262; *Middlekauff* v. *Smith*, 1 Md. 239.

DOE, C. J. Counts in contract and tort may be joined in a declaration on a single cause of action. It does not appear that the counts were not on the same cause of action, or that the amendment was necessary, or had any effect upon the trial or the verdict.

The construction of the written contract is the ascertainment of the fact of the parties' intention from competent evidence. *Houghton* v. *Pattee*, 58 N. H. 326; *Morse* v. *Morse*, 58 N. H. 391. The dam was not leased to the plaintiffs, and the lease does not prove an understanding that the dam was to be kept in repair by them, either for their own benefit or that of the defendants. On the contrary, the limitations of the water right granted to the plaintiffs, and the title, possession, control, and use of the dam retained by the defendants, show an understanding that the defendants were at least to exercise ordinary care in the work of so maintaining the dam as to give the plaintiffs the power demised to them. Whether the true construction is more favorable to the plaintiffs than that, the questions tried, the instructions given to the jury, and the verdict render it unnecessary to inquire.

-The defendants have not argued the questions raised by the evidence relating to the use of water at Rolfe's mill, and do not claim that Rolfe could continue to use the water at that mill as he had used it before the starch mill privilege was leased to the plaintiffs. They put this part of their case on the ground that for his use, at his mill, of any water when it was not running to waste over the dam, he had the plaintiffs' consent.

The use of the force pump to transport water to a house for domestic purposes, not being necessary for the grist-mill, the defendants' retention of the right of such use is not implied.    *Smith* v. *Smith* (Grafton, June, 1882); *Adams* v. *Marshall*, 138 Mass. 228, 236.    *62 N. H. 424*

The jury found that the defendants' negligent or wanton waste and diversion of the water compelled the plaintiffs, acting with reasonable discretion, to discontinue the business for which the lease stipulated the leased premises were to be used.   The loss of profits being a damage alleged in the declaration, proof of the amount of such loss was competent.    *Taylor* v. *Dustin*, 43 N. H. 493.   The manufacture of starch being the business to which the lease restricted the plaintiffs, and profit being presumably the object of the business, the loss of profit could be reasonably anticipated by both parties, as a damage likely to be caused by such a waste and diversion of the water as would extinguish the business.   It seems to be admitted that the measure of damages was not less than the difference between the rental value of the premises with, and their rental value without, the waste and diversion; and the profit of the business was a large, if not the only, element of rental value. Remote and speculative damages were excluded by the instructions given on this point.

*Judgment on the verdict.*

BLODGETT and BINGHAM, JJ., did not sit: the others concurred.